# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

SVB FINANCIAL TRUST,

c/o Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

                    Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its corporate capacity,

550 17th Street, NW
Washington, DC 20429-9990

                    Defendant.

---

SVB FINANCIAL TRUST,

                    Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
SILICON VALLEY BANK AND SILICON
VALLEY BRIDGE BANK, N.A.,

550 17th Street, NW
Washington, DC 20429-9990

                    Defendant.

Case: 1:25−mc−00062
Assigned To : Jackson, Amy Berman
Assign. Date : 5/6/2025
Description: Misc. Case

Misc. No. _____

## FDIC-C'S MOTION TO QUASH SUBPOENA
## FOR DEPOSITION OF FORMER FDIC CHAIRMAN MARTIN GRUENBERG,
## AND IN THE ALTERNATIVE FOR A PROTECTIVE ORDER



**RECEIVED**

MAY 06 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## TABLE OF CONTENTS

**INTRODUCTION**......................................................................................................1

**BACKGROUND** ......................................................................................................2

     A.    Silicon Valley Bank's Failure ...................................................................2

     B.    SVBFG's Deposit Accounts ......................................................................4

     C.    SVBFG's Lawsuits ...................................................................................4

     D.    Allegations Referencing FDIC Chairman Gruenberg.................................6

**LEGAL STANDARD** ...............................................................................................7

**ARGUMENT** .............................................................................................................7

I.     The Court Should Quash The Deposition Subpoena Under the Apex Doctrine.................7

     A.    The Apex Doctrine Protects High-Level Government Officials From Having To Testify About Their Official Actions Absent Exceptional Circumstances.............7

     B.    The Apex Doctrine Applies To Former FDIC Chairman Gruenberg. ...................10

     C.    No "Exceptional Circumstances" Warrant Deposing Chairman Gruenberg. ........11

II.    Alternatively, The Court Should Issue A Protective Order Minimizing The Undue Burden Of Any Deposition. ........................................................................................15

**CONCLUSION** .......................................................................................................16

## INTRODUCTION

Plaintiff SVB Financial Trust (**SVBFT**) is the successor entity to SVB Financial Group (**SVBFG**), which was the holding company of Silicon Valley Bank (**the Bank**). In March 2023, the Bank failed and SVBFG declared bankruptcy. Their primary federal supervisor, the Board of Governors of the Federal Reserve System, concluded that the Bank's failure was due to SVBFG's mismanagement. That failure caused an estimated loss of over $19 billion to the Deposit Insurance Fund, which Defendant Federal Deposit Insurance Corporation, in its corporate capacity (**FDIC-C**), administers to protect depositors of failed banks. All told, it was one of the largest bank failures in U.S. history.

Not content with the losses it already caused, SVBFT sued FDIC-C in the Northern District of California for $1.9 billion from the Deposit Insurance Fund to cover its deposit accounts at the Bank it mismanaged and drove into failure. In essence, SVBFT is seeking insurance on the house it caused to burn down. As part of that case, SVBFT subpoenaed the former Chairman of the FDIC, Martin Gruenberg, to be deposed in the District of Columbia.

The subpoena should be quashed under the doctrine that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985). Under this doctrine, which is often called the apex doctrine, the party seeking to depose a top government official "must demonstrate exceptional circumstances justifying the deposition." *FDIC v. Galan-Alvarez*, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015) (citation omitted) (quashing subpoena to depose former FDIC Chairperson Sheila Bair). A showing of exceptional circumstances requires, at a minimum, that the information sought is essential to SVBFT's case and is not available from any alternative source. *In re U.S. Dep't of Educ.*, 25 F.4th 692, 703–05 (9th Cir. 2022). SVBFT cannot make such an exceptional showing here.

*First*, Chairman Gruenberg has no unique first-hand knowledge because his only supposed "involvement" in the underlying case was being the signatory and spokesperson for a handful of public statements on behalf of the agency he chaired. The public statements at issue speak for themselves and FDIC-C does not dispute they were made. Indeed, FDIC-C has offered to so stipulate. SVBFT has not "demonstrated a need for [Gruenberg's] testimony beyond what is already in the public record." *In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015).

*Second*, SVBFT has not even attempted to obtain the information it seeks through less burdensome means, such as taking depositions of other FDIC employees, taking a 30(b)(6) deposition of FDIC-C, serving written discovery, or taking FDIC-C up on its offer to negotiate the above-mentioned stipulation regarding Chairman Gruenberg's statements. Accordingly, FDIC-C requests that the Court quash SVBFT's subpoena to depose Chairman Gruenberg.

## BACKGROUND

The key events in this case happened during March 2023.

### A.    Silicon Valley Bank's Failure

On March 9, 2023, a Thursday, Silicon Valley Bank collapsed and FDIC became the Bank's receiver on Friday morning, March 10, 203 (referred to in that capacity as **FDIC-R1**). *SVB Fin. Trust v. FDIC*, 2025 WL 661599, at *1 (N.D. Cal. Feb. 27, 2025). According to the Federal Reserve, which "was the primary federal regulator for the [B]ank and SVB Financial Group," the Bank "failed due to ineffective risk management, including the management of its deposits and assets." U.S. Gov't Accountability Office, *Preliminary Review of Agency Actions Related to March 2023 Bank Failures*, at 10, 14 (Apr. 2023), https://www.gao.gov/assets/gao-23-106736.pdf. The Federal Reserve described its views about SVBFG's mismanagement in a comprehensive report. *See* Board of Governors of the Federal Reserve System, *Review of the Federal Reserve's*

*Supervision   and   Regulation   of   Silicon   Valley   Bank*   (Apr.   28,   2023), https://www.federalreserve.gov/publications/files/svb-review-20230428.pdf.

On Sunday, March 12—two days after the Bank failed—the Secretary of the Treasury, acting on the recommendations of the FDIC Board of Directors and the Federal Reserve, and after consulting   with   the   President,   invoked   the   systemic   risk   exception   under   12   U.S.C. § 1823(c)(4)(G), which enabled the FDIC to complete its resolution of Silicon Valley Bank in a manner that protected all depositors, both insured and uninsured. *See* Joint Statement by the Department   of   the   Treasury,   Federal   Reserve,   and   FDIC   (Mar.   12,   2023), https://www.fdic.gov/news/press-releases/2023/pr23017.html.

The next day, March 13, FDIC-R1 transferred the deposit accounts of Silicon Valley Bank to a newly created Silicon Valley Bridge Bank. *See* Transfer Agreement between FDIC-R1 and Silicon   Valley   Bridge   Bank,   NA   (Mar.   13,   2023),   https://www.fdic.gov/system/files/2024-07/silicon-valley-transfer-agreement.pdf.   The   FDIC   announced   that   the   deposit   accounts transferred to Bridge Bank would be accessible to depositors beginning that morning. *See* FDIC, *FDIC Acts to Protect All Depositors of the former Silicon Valley Bank, Santa Clara, California* (Mar. 13, 2023), https://www.fdic.gov/news/press-releases/2023/pr23019.html.

The FDIC estimates that the loss to the Deposit Insurance Fund from protecting Silicon Valley Bank's depositors exceeds $19 billion, although this estimate is adjusted periodically as the receivership progresses. *See* FDIC, *Special Assessment Pursuant to Systemic Risk Determination* (visited May 1, 2025), https://www.fdic.gov/deposit-insurance-assessments/special-assessment-pursuant-systemic-risk-determination (estimating $22 billion loss from failures of Silicon Valley Bank and Signature Bank, as of December 31, 2024); 88 Fed. Reg. 83329, 83331 (Nov. 29, 2023) (estimating $17 billion loss just from Silicon Valley Bank's failure, as of November 2023).

### B.    SVBFG's Deposit Accounts

When Silicon Valley Bank failed on March 10, SVBFG had deposit accounts at the Bank of $2.1 billion. *SVB Fin. Trust*, 2025 WL 661599, at *1. Pursuant to the Transfer Agreement, on March 13 Bridge Bank assumed FDIC-R1's obligations to pay SVBFG's deposit liabilities. *Id.* at *2. Over the next several days "SVBFG withdrew approximately $180 million" from Bridge Bank. *Id.* It has sued FDIC-C for the remaining $1.93 billion. *Id.*

By March 15—just two days after the transfer of deposit accounts from FDIC-R1 to Bridge Bank—FDIC-R1 issued a call notice rescinding Bridge Bank's assumption of SVBFG's deposit liabilities and, with Bridge Bank, executed a new agreement that transferred the liabilities back from Bridge Bank to FDIC-R1. *See* Ex. A (**Call Notice & Assignment**). The Call Notice & Assignment were made pursuant to § 2.04 of the Transfer Agreement, which bestows on FDIC-R1 the right to request that the Bridge Bank assign to FDIC-R1 any assumed liabilities.

On March 17, 2023, SVBFG entered bankruptcy proceedings in the Southern District of New York. *In re SVB Fin. Group*, No. 1:23-bk-10367 (S.D.N.Y.).

On March 27, Bridge Bank entered into a purchase and assumption agreement with First-Citizens Bank & Trust Company. *SVB Fin. Trust*, 2025 WL 661599, at *2. Consistent with the fact that FDIC-R1 had rescinded Bridge Bank's assumption of SVBFG's deposit liabilities on March 15, SVBFG's deposit accounts "were expressly excluded from the transfer to First Citizens." *Id.*

### C.    SVBFG's Lawsuits

In July 2023, SVBFG commenced an adversary proceeding against FDIC-C and FDIC-R1 in bankruptcy court. *SVB Fin. Group v. FDIC*, No. 1:23-ap-01137 (Bankr. S.D.N.Y.). It later voluntarily dismissed that lawsuit after the district court withdrew the reference to the bankruptcy court on December 13, 2023. *In re SVB Fin. Group*, 2023 WL 8622521 (S.D.N.Y. Dec. 13, 2023).

Six days later, SVBFG sued FDIC-C in the Northern District of California for over $1.9 billion from the Deposit Insurance Fund (the same fund it had caused an estimated $19 billion in damages to through its mismanagement). *See SVB Fin. Trust v. FDIC, in its corporate capacity*, No. 5:23-cv-06543 (N.D. Cal.). It filed an amended complaint, which is the operative complaint, in August 2024. Ex. B (**Am. Complaint**).

SVBFG separately sued FDIC-R1. *See SVB Fin. Trust v. FDIC, as Receiver for Silicon Valley Bank*, No. 5:24-cv-01321 (N.D. Cal.). SVBFG filed separate lawsuits against FDIC-C and FDIC-R1 because they are legally separate entities, and one is not liable for actions of the other. *See SVB Fin. Group*, 2024 WL 3745009, at *11; *see also Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 709 (9th Cir. 1995) ("Because FDIC Corporate and FDIC Receiver perform two different functions and protect wholly different interests, courts have been careful to keep the rights and liabilities of these two entities legally separate."). "In its corporate capacity, the FDIC acts as an insurer of bank deposits, while as a receiver it manages the assets and liabilities of failed institutions." *Dubois v. Washington Mut. Bank*, 2010 WL 3463368, at *6 (D.D.C. 2010) (citations omitted).

In August 2024 and February 2025, the district court dismissed most of SVBFT's claims against FDIC-C, leaving only two substantive claims: turnover under 11 U.S.C. § 542(b) and promissory estoppel. *See SVB Fin. Trust*, 2025 WL 661599; *SVB Fin. Group v. FDIC*, 2024 WL 3745009 (N.D. Cal. Aug. 8, 2024). The court ruled that SVBFT had adequately pleaded that FDIC-C has "control" over SVBFT's deposit accounts sufficient to state a turnover claim under § 542(b), although it found that the "allegations supporting 'control' are vanishingly thin." *SVB Fin. Trust*, 2025 WL 661599, at *6. The court further ruled that SVBFT had adequately pleaded a claim of promissory estoppel. *Id.* at *12–13. SVBFT's promissory estoppel theory is that it relied on FDIC-

C's public statements when deciding that it would "not attempt to withdraw or transfer all of its uninsured deposits out of Bridge Bank" during March 13–15, 2023, "even though it could have done so, as SVBFG had access to its funds for three days after the funds were transferred to Bridge Bank" before they were recalled to FDIC-R1 on March 15, 2023. Am. Compl. ¶ 173.

### D.    Allegations Referencing FDIC Chairman Gruenberg

SVBFT's operative complaint against FDIC-C contains the following allegations regarding FDIC Chairman Gruenberg:

(1) On March 12, 2023, Secretary of the Treasury Janet Yellen, Federal Reserve Board Chair Jerome H. Powell, and FDIC Chairman Martin Gruenberg issued a joint statement announcing the invocation of the systemic risk exception to enable FDIC to protect all depositors of Silicon Valley Bank. Am. Compl. ¶ 2.

(2) Over the ensuing days and months, Chairman Gruenberg made public statements confirming that the systemic risk exception covered all uninsured deposits of all Silicon Valley Bank depositors, including various statements to Congress on March 28, March 29, May 16, and May 18, 2023, and a statement during a meeting of FDIC's Systemic Resolution Advisory Committee on December 5, 2023. Am Comp. ¶¶ 47, 55, 57, 58, 60, 61, 63, 71.

(3) Chairman Gruenberg also informed Congress that the losses to the Deposit Insurance Fund arising from invocation of the systemic risk exception will be recovered through a special assessment on 113 banking institutions, and 95% of the cost will be borne by institutions with assets over $50 billion. Am. Compl. ¶ 101.

(4) If FDIC-C's position is that it has discretion to determine whether to guarantee SVBFT's uninsured deposits, then FDIC-C's statements on March 12 and 13 concerning the terms of the systemic risk exception and depositors' access to their

deposit accounts, and similar statements by Chairman Gruenberg, were knowingly and egregiously false. Am. Comp. ¶ 175.

## LEGAL STANDARD

A district court "must quash or modify a subpoena that: . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Although usually the "party moving to quash a subpoena to testify bears the burden of persuasion," in the context of subpoenas seeking to depose high-ranking government officials—such as the former Chairman of the FDIC—it is "the party seeking to depose the official" that bears the burden. *Galan-Alvarez*, 2015 WL 5602342, at *3. The party seeking the deposition must show "exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Id.* (quoting *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)).

## ARGUMENT

I.    **The Court Should Quash The Deposition Subpoena Under the Apex Doctrine.**

A.    **The Apex Doctrine Protects High-Level Government Officials From Having To Testify About Their Official Actions Absent Exceptional Circumstances.**

Under what has become known as the apex doctrine, "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex*, 766 F.2d at 586 (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)). "Indeed, there is a presumption against deposing high-ranking government officials." *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (cleaned up).

The doctrine arose out of the Supreme Court's decision in *Morgan*, where, "[o]ver the Government's objection the district court authorized the [plaintiffs] to take the deposition of the Secretary [of Agriculture]." 313 U.S. at 421–22. The Supreme Court ruled that "the Secretary

should never have been subjected to this examination," as "'it was not the function of the court to probe the mental processes of the Secretary.'" *Id.* at 422 (quoting *Morgan v. United States*, 304 U.S. 1, 18 (1938)).

Applying this doctrine, courts in this Circuit regularly block depositions of high-ranking federal officials. *E.g.*, *In re United States*, 2014 U.S. App. Lexis 14134 (D.C. Cir. July 24, 2014) (Secretary of Agriculture); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (Vice President's Chief of Staff); *Simplex*, 766 F.2d at 586–87 (top Department of Labor officials); *Newman*, 531 F. Supp. 3d at 188–91 (former White House officials). So do sister circuits. *E.g.*, *In re McCarthy*, 636 F. App'x 142 (4th Cir. 2015) (EPA Administrator); *Warren Bank v. Camp*, 396 F.2d 52, 56 (6th Cir. 1968) (Comptroller of Currency); *In re CFTC*, 941 F.3d 869 (7th Cir. 2019) (Chairman and members of the CFTC); *In re United States*, 197 F.3d 310 (8th Cir. 1999) (Attorney General and Deputy Attorney General); *In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022) (former Secretary of Education); *In re United States*, 624 F.3d 1368 (11th Cir. 2010) (EPA Administrator); *In re United States*, 542 F. App'x 944 (Fed. Cir. 2013) (Chairman of the Federal Reserve).

The purpose of this doctrine is at least three-fold: "(1) to protect the integrity and independence of the government's decision-making processes; (2) to permit high-ranking government officials 'to perform their official tasks without disruption or diversion'; and (3) to limit 'indiscriminate depositions' that would discourage individuals 'from accepting positions as public servants.'" *Newman*, 531 F. Supp. 3d at 188 (quoting *Galen-Alvarez*, 2015 WL 5602342, at *4; other citations omitted).

The primary rationale—protecting the integrity of the government's decision-making processes—has both constitutional and practical dimensions. As a constitutional matter, "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings

of other branches of government. Placing a decision-maker on the stand is therefore 'usually to be avoided.'" *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)); *see also In re U.S. Dep't of Educ.*, 25 F.4th at 699–700 (discussing separation-of-powers concerns with deposing top executive branch officials). As a practical matter, allowing oral examination of top officials impairs good administrative decisionmaking. "[S]ubjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options, no matter how controversial." *Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 12 (D.D.C. 1993). The Supreme Court noted in *Morgan* that allowing a deposition of a judge about a judicial decision "would be destructive of judicial responsibility," and the same is true of allowing a deposition of a top agency official about an agency decision. 313 U.S. at 422. "Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected." *Id.* (citations omitted).

These concerns apply with special force where—as here—the deposing party seeks testimony from high-level government officials to probe the thought processes, deliberations, and motivations underlying an agency's public actions and statements. Absent extraordinary circumstances, SVBFT is "clearly . . . not entitled" to depose Chairman Gruenberg "to probe his mind," *Warren Bank*, 396 F.2d at 56, or to seek the "reasons for taking officials actions," *Simplex*, 766 F.2d at 586, because it is "not the function of the court to probe the mental processes" of a senior executive branch official, *Morgan*, 313 U.S. at 422 (citations omitted); *see also In re United States*, 542 F. App'x at 949 ("Starr has not established the extraordinary circumstances necessary to justify the deposition of Chairman Bernanke at all . . . , much less to inquire into the Federal Reserve's deliberative processes or the Chairman's mental process."); *In re United States*, 624

F.3d at 1376 ("*Morgan* does not suggest or even hint that a federal district court should ever compel a member of the President's cabinet or another high-ranking official to appear in a judicial proceeding to testify about the official's duties or decisions.").

Simply put, "a district court should rarely, if ever, compel the attendance of a high-ranking official in a judicial proceeding." *In re United States*, 624 F.3d at 1376.

### B.    The Apex Doctrine Applies To Former FDIC Chairman Gruenberg.

Senior FDIC officials, including the FDIC's Chairperson, qualify as high-ranking government officials who are shielded from deposition by the apex doctrine. *See Galan-Alvarez*, 2015 WL 5602342 (quashing subpoenas for depositions of FDIC Chairperson and FDIC Senior Deputy Director); *In re FDIC*, 58 F.3d 1055 (5th Cir. 1995) (granting mandamus to quash depositions of Acting FDIC Chairman and other FDIC board members). The management of FDIC is vested in a five-member board of directors, one of whom serves as the Chairperson. 12 U.S.C. § 1812(a), (b). Martin Gruenberg served as FDIC's Chairman on multiple occasions, including, as is relevant here, during January 2023–January 2025. *See* FDIC, *List of Chairmen of the FDIC* (visited May 1, 2025), https://www.fdic.gov/history/list-chairmen-fdic; FDIC, *Martin J. Gruenberg Sworn in as 22nd FDIC Chairman* (Jan. 5, 2023), https://www.fdic.gov/news/press-releases/2023/pr23004.html.

Although Chairman Gruenberg is no longer the FDIC Chairman, the apex doctrine "equally applies to both former and current government officials." *Husayn v. Austin*, 2024 WL 4443740, at *26 (D.D.C. Oct. 8, 2024) (applying doctrine to former CIA director and former White House counsel); *accord Newman*, 531 F. Supp. 3d at 188 (same for former White House officials); *In re U.S. Dep't of Educ.*, 25 F.4th at 705 (same for former Secretary of Education). Indeed, in *Galan-Alvarez*, this Court expressly rejected the argument that former FDIC Chairperson Bair was not covered by the apex doctrine just because she was a former official. 2015 WL 5602342, at *4. As

the Court explained, "[t]he integrity of administrative proceedings and the underlying decisionmaking process of agency officials are just as important where the official to be questioned no longer serves in the same position." *Id.* "And 'indiscriminate depositions of high-ranking government officials would . . . likely discourage' people 'from accepting positions as public servants' irrespective of whether those deposed were current or former officials." *Id.* (quoting *United States v. Wal-Mart Stores, Inc.*, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2001)).

Just as the apex doctrine protected Former FDIC Chairperson Bair from deposition, it similarly shields former Chairman Gruenberg, absent a showing by SVBFT of "exceptional circumstances."

### C.    No "Exceptional Circumstances" Warrant Deposing Chairman Gruenberg.

SVBFT has not carried its burden to "demonstrate exceptional circumstances justifying the deposition" of Chairman Gruenberg. *Galan-Alvarez*, 2015 WL 5602342 at *3. To establish exceptional circumstances, SVBFT must "establish at a minimum" both that Chairman Gruenberg possesses "information essential to [SVBFT's] case" and that the information "is not obtainable from another source." *In re United States*, 197 F.3d at 314; *accord, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 703 ("[T]he information sought in the deposition must be essential to the case. If the information is not absolutely needed for a case, we cannot allow a deposition to disrupt the normal governmental balance of powers."); *id.* at 704 ("[T]he information sought cannot be obtainable in any other way."); *In re Off. of the Utah Attorney Gen.*, 56 F.4th 1254, 1264 (10th Cir. 2022) (quashing subpoena; "party seeking the deposition of a high-ranking official must show," among other things, that "the deposition is essential to the party's case" and that "the information cannot be obtained from an alternative source or via less burdensome means") (citations omitted). Here, the information SVBFT seeks from Chairman Gruenberg is not essential to its case and is obtainable from other sources.

*First*, a deposition of Chairman Gruenberg is not absolutely needed for SVBFT's case. SVBFT has two substantive claims remaining: a turnover claim and a promissory estoppel claim. *See SVB Fin. Trust*, 2025 WL 661599, at *6–7, 12–13.

Testimony from Chairman Gruenberg is not essential—indeed, it is not even relevant—to SVBFT's turnover claim. That claim hinges largely on whether FDIC-C has "control" over SVBFT's deposit accounts. *Id.* at *6–7. The district court found that the "allegations supporting 'control' are vanishingly thin," but it accepted as sufficient at the pleading stage SVBFT's allegations that emails by certain employees allegedly acting for FDIC-C could be read to infer FDIC-C exercised "control" over SVBFT's accounts and over the decision by FDIC-R1 to call back SVBFT's deposit liabilities from Bridge Bank. *Id.* at *6. Chairman Gruenberg was not on any of those emails (plaintiff has the emails). Rather, the main individuals that allegedly acted for FDIC-C are "Acting Deputy General Counsel of the FDIC, Richard Penfield Starke," "Audra L. Cast, Deputy Director of the Division of Resolutions," and "Ryan Tetrick, Deputy Director of Resolution Readiness." Am. Compl. ¶ 77; *see also id.* ¶¶ 80–88. SVBFT has noticed depositions of two of those individuals (it elected not to seek to depose the third), and the two are currently scheduled to sit for depositions in June 2025. *See* Exs. C, D (deposition notices). SVBFT does not (and cannot) allege that Chairman Gruenberg had any first-hand involvement in, or personal knowledge of, these alleged email exchanges or other alleged actions by FDIC-C pertaining to SVBFT's deposit accounts that are necessary to SVBFT's turnover claim. SVBFT's allegations about Chairman Gruenberg pertain only to high-level public statements he made about the protection of depositors of Silicon Valley Bank generally. *See* Background § D, above. There is no allegation, or basis to allege, that testimony from Chairman Gruenberg has any relevance, let alone necessity, to SVBFT's turnover claim.

Nor does Chairman Gruenberg possess knowledge essential to SVBFT's promissory estoppel claim. SVBFT does allege that certain public statements by Chairman Gruenberg—such as the joint statement released on March 12, 2023, by Secretary of the Treasury Yellen, Federal Reserve Chair Powell, and FDIC Chairman Gruenberg—support its claim that FDIC-C made a promise that it intended SVBFT to rely on. Am. Compl. ¶¶ 2, 171–75. But SVBFT has not "demonstrated a need for [Gruenberg's] testimony beyond what is already in the public record." *In re McCarthy*, 636 F. App'x at 144. FDIC-C does not dispute that Chairman Gruenberg made the March 12 statement or the other statements SVBFT points to. And it "does not follow" that a top public official has essential knowledge sufficient to satisfy the exceptional circumstances test simply because "he made public statements about a matter that later became the subject of litigation." *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023). To the contrary, it is "entirely *unexceptional* for a public official to comment publicly about a matter of public concern. If doing so imparts unique knowledge, high-level officials will routinely have to testify." *Id.* (emphasis added).

Because SVBFT already has the public statements by Chairman Gruenberg that it contends relate to its promissory estoppel claim, it has no need to depose him. SVBFT apparently seeks to probe Chairman Gruenberg's personal thoughts and deliberations with respect to his official public statements. But those thoughts and deliberations are irrelevant and not a permissible subject of deposition. They are irrelevant because the existence of an actionable promise for purposes of a promissory estoppel claim is evaluated objectively—by an "objective intention to be bound by a promise"—not by an individual's subjective, personal thoughts. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1108 (9th Cir. 2009). Any FDIC-C liability must be because of its official actions—what FDIC-C "itself said and did, not because of what any of its members or employees thought or

planned." *In re CFTC*, 941 F.3d at 873. And even if Chairman Gruenberg's personal thoughts were relevant, it is "not the function of the court to probe the mental processes" of a senior executive branch official. *Morgan*, 313 U.S. at 422 (citations omitted). For example, the Federal Circuit blocked the deposition of Federal Reserve Chairman Bernanke, even though "Chairman Bernanke had provided testimony before Congress" and "given various public speeches and written a book" about issues relevant to the case at issue, precisely because the deposition impermissibly sought to "inquire into the Federal Reserve's deliberative processes or Chairman Bernanke's mental processes." *In re United States*, 542 F. App'x at 946, 949. Likewise, the Sixth Circuit blocked the deposition of the Comptroller of Currency, who had issued a charter to a new national bank, because the deposition impermissibly sought "to probe his mind as to exactly why he saw fit to exercise his discretion as he did in relation to the grant of this charter." *Warren Bank*, 396 F.2d at 56.

**Second**, whatever information SVBFT seeks from Chairman Gruenberg's deposition is available from other sources, which it has not yet exhausted. Courts routinely require that parties attempting to depose high ranking officials show that they have first exhausted other methods of obtaining the information they need, such as depositions of other officials or employees, 30(b)(6) depositions, or written discovery. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 704 ("Plaintiffs did not exhaust their alternatives here. For example, they did not use all of their interrogatories and never took a Rule 30(b)(6) deposition. . . . Exhaustion of all reasonable alternative sources is required."); *All. for Glob. Just. v. D.C.*, 2005 WL 1799553, at *3 (D.D.C. July 29, 2005) ("plaintiffs have made no showing that the information they seek cannot be obtained elsewhere").

SVBFT is already scheduled to depose two other high-level FDIC officials—who were personally involved in the conduct alleged to be at issue in the case and who have information

relevant to SVBFT's claims. *See* Exs. C, D; *cf. Galan-Alvarez*, 2015 WL 5602342, at *5 (quashing deposition of FDIC Chairperson Bair in part because FDIC made available for deposition "four other officials, all of whom had greater involvement in the day-to-day progress of the bank's closure"). In addition, FDIC-C has agreed to sit for a 30(b)(6) deposition, which is being scheduled. *Cf. In re McCarthy*, 636 F. App'x at 144 (blocking deposition of EPA Administrator in part because "the district court has authorized Plaintiffs to take a Rule 30(b)(6) deposition of the agency"). SVBFT also still has unused interrogatories. *Cf. In re U.S. Dep't of Educ.*, 25 F.4th at 704 (blocking deposition of Secretary of Education in part because plaintiffs "did not use all of their interrogatories"). And FDIC-C has repeatedly offered to negotiate a stipulation of fact regarding Chairman Gruenberg's public statements, but SVBFT has refused to engage. Given all these available, unexhausted alternatives, SVBFT cannot establish that the information it seeks from a deposition of Chairman Gruenberg "is not obtainable from another source." *In re United States*, 197 F.3d at 314.

In sum, SVBFT cannot establish the extraordinary circumstances warranting an apex deposition of the former Chairman of the FDIC when it has not completed its depositions of other FDIC officials and exhausted other avenues of discovery, and when it has not shown that, after exhausting those other options, there remains information necessary for SVBFT's claims that it can glean only from a deposition of Chairman Gruenberg himself.

## II. Alternatively, The Court Should Issue A Protective Order Minimizing The Undue Burden Of Any Deposition.

Although FDIC-C believes that *any* deposition of Former Chairman Gruenberg would be improper, should the Court decline to quash the subpoena outright, a protective order should issue limiting the scope of the deposition to protect the witness from annoyance and undue burden. Fed.

R. Civ. P. 26(c)(1)(A). In particular, if the deposition goes forward (it should not), the duration should be capped at one hour.

## CONCLUSION

The Court should quash the subpoena to depose former FDIC Chairman Martin Gruenberg.

Dated:  May 6, 2025

FEDERAL DEPOSIT INSURANCE CORPORATION
Andrew J. Dober
Senior Counsel

*/s/* Erik Bond
Erik Bond, Counsel

Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive
Arlington, VA 22226
Telephone: (703) 562-6461
erbond@fdic.gov

Jason Benton, Counsel
350 Fifth Avenue, Suite 1200
New York, NY 10118

*Counsel to the Federal Deposit Insurance Corporation (in its corporate capacity) and the witness*

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7(m)</u>

The undersigned counsel hereby certifies that the parties conferred on the necessity and propriety of the Gruenberg subpoena and that, following the conferrals, Plaintiff SVB Financial Trust insisted upon serving the Gruenberg subpoena, thus necessitating the instant motion.

*/s/ Erik Bond*
Erik Bond, Counsel
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive
Arlington, VA 22226
Telephone: (703) 562-6461
erbond@fdic.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2025, the foregoing document, along with the accompanying exhibits, was filed with the Clerk of Court for the U.S. District Court for the District of Columbia via ECF.  I also certify that the foregoing document is being served via overnight delivery upon the following counsel for SVBFT:

> Julia L. Allen
> Keker, Van Nest & Peters LLP
> 633 Battery Street
> San Francisco, CA 94111-1809

> */s/ Erik Bond*
> Erik Bond